**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

| | |
|---|---|
| STEVE WILLIAMS AND TERESA WILLIAMS,<br><br>Plaintiffs,<br><br>vs.<br><br>MICHELLE PETERSON-JONES, M.D.; JEREMY BAUM, M.D.; NEBRASKA-IOWA RADIOLOGY CONSULTANTS, INC.,<br><br>Defendants. | **CASE NO. 1:20-cv-00001-CRW-SBJ**<br><br>**AMENDED COMPLAINT (JURY TRIAL DEMANDED)** |

Plaintiffs state:

**Parties**

1. This is a medical malpractice case arising from the delay in diagnosis of Steve Williams's cancer as a result of Defendants' failure to provide reasonable medical care.

2. Plaintiff Steve Williams is a citizen of and resident of the State of Iowa. He is the husband of Teresa Williams.

3. Plaintiff Teresa Williams is a citizen of and resident of the State of Iowa. She is the wife of Steve Williams.

4. Upon information and belief, Defendant Michelle Peterson-Jones, MD is a citizen and resident of the State of Nebraska. At all relevant times, Dr. Peterson-Jones has been licensed to practice medicine in the State of Iowa by the Iowa Board of Medicine, and did practice medicine in the State of Iowa. Dr. Peterson-Jones held herself out as and practiced as a specialist in the medical specialty of radiology.

PLAINTIFFS'
EXHIBIT
1

5. Upon information and belief, Defendant Jeremy Baum, MD is a citizen and resident of the State of Nebraska. At all relevant times, Dr. Baum has been licensed to practice medicine in the State of Iowa by the Iowa Board of Medicine, and did practice medicine in the State of Iowa. Dr. Baum held himself out as and practiced as a specialist in the medical specialty of radiology.

6. Defendant Nebraska-Iowa Radiology Consultants, Inc., ("Nebraska-Iowa Radiology") was a corporation organized and existing under the laws of the State of Nebraska, with its principal place of business at 11111 S. 84th St., Papillion, NE 68046.

7. Nebraska-Iowa Radiology employed Defendant Peterson-Jones, Defendant Baum, and other physicians. Defendant Peterson-Jones was an employee and/or agent of Nebraska-Iowa Radiology acting in the course of her employment and/or agency with Nebraska-Iowa Radiology when she provided medical care as a radiologist to Steve Williams. Defendant Baum was an employee and/or agent of Nebraska-Iowa Radiology acting in the course of his employment and/or agency with Nebraska-Iowa Radiology when he provided medical care as a radiologist to Steve Williams.

8. Defendant Nebraska-Iowa Radiology is vicariously liable for any negligent health care that Dr. Peterson-Jones and/or Dr. Baum provided to Steve Williams.

**Jurisdiction and Venue**

9. The U.S. District Court for the Southern District of Iowa has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) as there is complete diversity of citizenship between Plaintiffs and Defendants and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

10. Defendant Peterson-Jones is subject to the *in personam* jurisdiction of this Court because she holds a license to practice medicine in the State of Iowa, did and/or does practice medicine within Iowa, and committed a tort in whole or in part in Iowa against Plaintiff, Steve Williams, as described with particularity below.

11. Defendant Baum is subject to the *in personam* jurisdiction of this Court because he holds a license to practice medicine in the State of Iowa, did and/or does practice medicine within Iowa, and committed a tort in whole or in part in Iowa against Plaintiff, Steve Williams, as described with particularity below.

12. Defendant Nebraska-Iowa Radiology is subject to the *in personam* jurisdiction of this Court because it did and/or does employ physicians, including Dr. Peterson-Jones and Dr. Baum, to provide medical treatment and/or medical advice within the State of Iowa.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the tortious conduct giving rise to Plaintiffs' claims occurred while Dr. Peterson-Jones and Dr. Baum were practicing medicine in the State of Iowa.

**General Allegations**

14. In March of 2015, Steve Williams presented to Clarinda Regional Health Center with chest pain. Dr. Stanley – Steve Williams' family physician – ordered an x-ray of Steve Williams' chest.

15. On March 11, 2015, Dr. Michelle Peterson-Jones read the images from that chest x-ray and issued a report.

16. Dr. Peterson-Jones' Radiology Report states "Clinical History: Chest Pain."

17. Dr. Peterson-Jones' Radiology Report states "Discussion: Three views of the chest are without comparison. Cardiac silhouette and pulmonary vasculature are normal. There is

mild pulmonary hyperinflation. There is no infiltrate or edema. There is no pneumothorax. There is atherosclerosis within the aorta, mild. Epigastrium is unremarkable. There are age appropriate degenerative changes of the thoracic spine.”

18. Dr. Peterson-Jones’ Radiology Report states “Impression: 1. No acute abnormality of the chest. Mild hyperinflation. 2. Antherosclerosis.”

19. Dr. Peterson-Jones did not report any lung tumor.

20. Contrary to Dr. Peterson-Jones’ findings, the images in Steve Williams’ chest x-rays indicated that Steve Williams had a lung tumor.

21. Steve Williams’ lung tumor was visible on the March 11, 2015 x-ray imaging.

22. In November of 2017, Steve Williams again presented to Clarinda Regional Health Center. Specifically, he complained of sharp, tingling pain in his right shoulder.

23. Effie Martinez, ARNP ordered an x-ray for the shoulder pain, and also provided Mr. Williams with Voltaren Gel.

24. An x-ray on November 27, 2017 showed degenerative changes of the shoulder with no acute osseous abnormality.

25. On November 27, 2017, Steve Williams reported neurologic symptoms, including “when touching his arm under armpit it feelings like tingling pain.”

26. On November 27, 2017, Steve Williams had lost 10 pounds since his April, 24, 2017 visit.

27. On December 5, 2017, Steve Williams presented to the Greater Regional Medical Center for follow-up due to continued complaints of right shoulder pain.

28. On December 5, 2017, Steve Williams also reported neurologic symptoms including numbness and tingling under his right arm and axilla in the lateral side of his pectoral muscle.

29. Steve Williams was assessed as having right shoulder osteoarthritis and possible subscpularis tear. He received a corticosteroid injection into his right shoulder. It was also recommended that he get an MRI of his right shoulder.

30. On December 21, 2017, Steve Williams again presented to Greater Regional Medical Center. Again, he reported neurologic symptoms including “numbness in upper arm.”

31. On January 3, 2018, Steve Williams returned to the Greater Regional Medical Center to see William Ralston, DO to discuss the results of the MRI of his right shoulder.

32. Dr. Ralson reviewed the MRI and explained to Steve Williams that it showed “attenuation of the upper border subscapular. Full thickness tear of the supraspinatus extending into the infraspinatus. [A]cromioclavicular joint arthritis.”

33. After discussing treatment options with Steve Williams, Dr. Ralston recommended surgical treatment, including shoulder arthroscopy, rotator cuff repair, and distal clavicle resection. Dr. Ralston asked Steve Williams “to get preoperative clearance from his primary prior to surgery.”

34. On January 12, 2018, ARNP Martinez cleared Mr. Williams for surgery and also ordered pre-op imaging, including a customary chest x-ray.

35. On January 12, 2018, Steve Williams had lost 6 additional pounds since his November 27, 2017 appointment.

36. The same day, January 12, 2018, Steve Williams had a pre-operative chest x-ray. Dr. Baum read the images from that chest x-ray and issued a report.

37. Dr. Baum's Radiology Report stated "Technique: Frontal and lateral views of the chest are performed and compared to study performed 3/11/2015."

38. Dr. Baum's "Findings" included "The cardiac silhouette is not enlarged. Pulmonary vasculature is unremarkable. There is pulmonary hyperinflation consistent with COPD. There is mild chronic interstitial thickening. There is no new consolidation or effusion. Calcified granulomas are demonstrated. Atherosclerotic changes are seen in the aorta. Degenerative changes are seen in the spine. There is mild chronic thoracic vertebral body wedging."

39. Dr. Baum did not report any lung tumor in his "Findings."

40. Dr. Baum erroneously identified Steve Williams' lung tumor as "calcified granulomas."

41. Contrary to Dr. Baum's Findings, the images in Steve Williams' chest x-rays clearly indicated that Steve Williams had a lung tumor, not calcified granulomas.

42. Steve Williams' lung tumor was clearly visible on the January 12, 2018 x-ray imaging.

43. Dr. Baum's "Impression" indicated "Pulmonary hyperinflation consistent with COPD with no acute interval change."

44. Dr. Baum's "Impression" failed to identify any lung tumor.

45. Dr. Baum electronically signed his Radiology Report on January 12, 2018 at 10:18 a.m.

46. On January 24, 2018, Dr. Ralston performed a "Right shoulder arthroscopy with arthroscopic rotator cuff repair of the supraspinatus rotator cuff tendon, subacromial decompression, distal clavicle resection, and mini open subpectoral bicep tenodesis."

47. The procedure went as planned with no complications.

48. On February 15, 2018, Steve Williams presented to Dr. Ralston for his two week check-up. He reported throbbing pain in the back of his shoulder.

49. With his continuing pain and discomfort, Dr. Ralston diagnosed Steve Williams with suprascapular nerve entrapment, adhesive capsulitis, partial recurrent rotator cuff team of the supraspinatus tendon.

50. On April 26, 2018, Dr. Ralston performed a right shoulder arthroscopy with arthroscopic suprascapular nerve release, capsular release, mini open revision rotator cuff repair.

51. The procedure went as planned with no complications.

52. Over the next several months, Steve Williams continued to complain of severe shoulder pain. On June 29, 2018, he sought a second opinion from Galyn VandeZande, DO at the Pella Regional Health Center.

53. According to Dr. VandeZande, "because of the radiation into his shoulder, chest, and arm as well as new ptosis noted I am and recommend that we get a CT scan looking for a Pancoast tumor."

54. On July 10, 2018, Steve Williams underwent a CT chest with contrast that showed an 8.5x7x7 cm "Right apical mass and associated bone destruction consistent with superior sulcus tumor".

55. On July 11, 2018, Steve Williams presented to the Nebraska Medical Center for additional care because of the severe pain he was in. He was admitted to the inpatient service for intractable pain and consult with oncology with further workup and biopsy.

56. While in the hospital, Steve Williams underwent a CT of his chest and PET, which showed large necrotic mass in the right lung extending into the mediastinum, abutting but

not invading or obstructing the trachea and esophagus. The mass was also noted to extend into the retroclavicular region, T1 and T2 transverse process and body of T1, as well as first two ribs.

57. Steve Williams had a biopsy that showed NSCLC/Adenocarcinoma, which was staged at IIIA.

58. Beginning on July 24, 2018, Steve Williams underwent chemotherapy. From January 24, 2018 to September 24, 2018, he underwent four cycles of CARBOplatin treatment.

59. Further, from August 9, 2018 through September 27, 2018, Steve Williams underwent 32 Fractions of Radiation treatment.

60. During his radiation and chemotherapy treatment, Steve Williams continued to undergo CT scans of his neck and chest.

61. In January of 2019, Steve Williams underwent a chest CT that showed no significant interval change in right apical pulmonary mass with adjacent osseous destruction, and noted “Right apical pulmonary mass is not significantly changed in size from prior imaging”.

62. To this day, Steve Williams’ prognosis remains poor.

63. Had Dr. Peterson-Jones properly identified the Pancoast tumor on the March 11, 2015 chest x-ray, Steve Williams’ medical outcome would have been significantly improved.

64. Dr. Peterson-Jones’ failure to timely diagnose Steve Williams’ cancer denied him a chance to be cured from the condition.

65. Had Dr. Baum properly identified the Pancoast tumor on the January 12, 2018 chest x-ray, Steve Williams’ medical outcome would have been significantly improved.

66. Dr. Baum’s failure to timely diagnose Steve Williams’ cancer denied him a chance to be cured from the condition.

67. Steve William's chance of a cure from his lung tumor was substantially reduced due to Dr. Baum's and Dr. Peterson-Jones' negligence and the resulting delay in diagnosis and treatment.

68. Dr. Peterson-Jones' failure to diagnose Steve Williams' cancer was a cause in denying him a chance to be cured.

69. Dr. Baum's failure to diagnose Steve Williams' cancer was a cause in denying him a chance to be cured.

70. Steve and Teresa Williams did not know, nor should they have known through the use of reasonable diligence, that Steve Williams had lung cancer until July 10, 2018 – the date of Steve's chest CT scan.

71. Steve and Teresa Williams were reasonable in relying upon Dr. Peterson-Jones' and Dr. Baum's radiology reports which stated that Steve Williams did not have lung cancer.

72. Steve and Teresa Williams were reasonable in declining to obtain a second opinion regarding Dr. Peterson-Jones' and Dr. Baum's radiology reports.

73. On February 4, 2020, Steve and Teresa Williams learned for the first time that Steve Williams' March 11, 2015 chest x-ray showed a lung tumor.

## FIRST CLAIM FOR RELIEF
### Medical Negligence – Dr. Peterson-Jones

74. Plaintiffs incorporate by reference paragraphs 1-73 of this Complaint.

75. Dr. Peterson-Jones was negligent in providing medical care as a specialist in radiology to Steve Williams, and Dr. Peterson-Jones failed to meet the required standards of care for a radiologist in such circumstances, including, but not limited to:

a. Failure to properly interpret Steve Williams' chest x-ray images taken on March 11, 2015;

      b. Failure to identify Steve Williams' lung tumor on the March 11, 2015 x-ray imaging; and

c. Failure to order additional imaging studies.

76. As a direct and proximate result of Dr. Peterson-Jones' negligence, Plaintiffs suffered injuries, damages, and losses, including, but not limited to the following:

a. Past and future medical, hospital and lifecare expenses;

b. Past loss of earnings;

c. Loss of future earning capacity;

d. Loss of chance of recovery;

e. Past and future loss of use of full mind and body; and

f. Past and future physical and mental pain and suffering, including loss of enjoyment of life.

**SECOND CLAIM FOR RELIEF**
**Medical Negligence – Dr. Baum**

77. Plaintiffs incorporate by reference paragraphs 1-76 of this Complaint.

78. Dr. Baum was negligent in providing medical care as a specialist in radiology to Steve Williams, and Dr. Baum failed to meet the required standards of care for a radiologist in such circumstances, including, but not limited to:

d. Failure to properly interpret Steve Williams' chest x-ray images taken on January 12, 2018;

e. Failure to identify Steve Williams' lung tumor on the January 12, 2018 x-ray imaging;

f. Mischaracterizing Steve Williams' lung tumor as calcified granulomas on the January 12, 2018 x-ray imaging; and

g. Failure to order additional imaging studies.

79. As a direct and proximate result of Dr. Baum's negligence, Plaintiffs suffered injuries, damages, and losses, including, but not limited to the following:

  g. Past and future medical, hospital and lifecare expenses;

h. Past loss of earnings;

i. Loss of future earning capacity;

j. Loss of chance of recovery;

k. Past and future loss of use of full mind and body; and

l. Past and future physical and mental pain and suffering, including loss of enjoyment of life.

**THIRD CLAIM FOR RELIEF**
***Respondeat Superior* – Defendant Nebraska-Iowa Radiology**

80. Plaintiffs incorporate by reference paragraphs 1-79 of this Complaint.

81. Dr. Peterson-Jones was an employee and/or agent of Defendant Nebraska-Iowa Radiology and was acting within the scope of her employment and/or agency duties at all times relevant to this case.

82. Dr. Peterson-Jones' employment and/or agency with Defendant Nebraska-Iowa Radiology included the interpretation of radiology imaging studies.

83. Dr. Baum was an employee and/or agent of Defendant Nebraska-Iowa Radiology and was acting within the scope of his employment and/or agency duties at all times relevant to this case.

84. Dr. Baum's employment and/or agency with Defendant Nebraska-Iowa Radiology included the interpretation of radiology imaging studies.

85. Defendant Nebraska-Iowa Radiology is legally responsible for the negligent actions of Dr. Peterson-Jones and Dr. Baum.

**FOURTH CLAIM FOR RELIEF**
**Loss of Consortium – All Defendants**

86. As a result of the injuries sustained by her husband, Steve Williams, Teresa Williams has suffered a loss of society, comfort, companionship, and consortium, and will continue to suffer such loss into the future.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs ask for judgment against Defendants in an amount in excess of seventy-five thousand dollars, together with costs, interest and such other and further relief as the Court deems just and appropriate under the circumstances.

**PLAINTIFFS DEMAND A TRIAL BY JURY**

DATED this __th day of February, 2020.

*s/ Bruce L. Braley*
Bruce L. Braley, Iowa Bar No. AT0001132
Brian N. Aleinikoff, (*pro hac vice* pending)
Tim J. Luetkemeyer, (*pro hac vice* pending)
LEVENTHAL PUGA BRALEY P.C.
950 South Cherry Street, Suite 600
Denver, CO 80246
Ph. 303-759-9945
Fax.303-759-9692
bbraley@leventhal-law.com
brian@leventhal-law.com
tluetkemeyer@leventhal-law.com
***ATTORNEYS FOR PLAINTIFFS***

**CERTIFICATE OF SERVICE**

I hereby certify that on February ___, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses and, I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participants in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

John C. Gray, Esq.
Heidman Law Firm, LLP
1128 Historic Fourth St.
Sioux City, IA 51102
Office: 712-255-8838
john.gray@heidmanlaw.com
***Attorney for Defendants***

*s/ Erica D. Whitlock*